**ENGINES SOUTHWEST, INC.**

**v.**

**KOHLER CO., et al.**

**Civil Action No. 03–1460.**

United States District Court,
W.D. Louisiana,
Shreveport Division.

May 16, 2005.

Bernard S. Johnson, Cook Yancey, et al, Jerald R. Harper, Shreveport, LA, for Plaintiff.

Charles Sterling Smith, John C. Roa, Hayes Harkey, et al, Monroe, LA, Larry Feldman, Jr., Wiener Weiss & Madison,

Scott C. Sinclair, Shreveport, LA, for Defendant.

## MEMORANDUM RULING

HICKS, District Judge.

This matter is before the Court on cross motions for summary judgment [Doc. Nos. 9 & 83]. Plaintiff Engines Southwest, Inc's ("ESW") motion asserts that it is entitled to summary judgment because the Louisiana Wholesaler Act ("Wholesaler Act") requires good cause and a 60 day period to cure provision before cancellation of any contract. Defendant Kohler Co.'s ("Kohler") motion contends that ESW is not a protected party under the Wholesaler Act, and that the contract was properly terminated pursuant to the contract provisions. For the following reasons, the Court now finds that the Wholesaler Act does apply to ESW and that summary judgment is proper as a matter of fact and law. Therefore, ESW's motion is granted and Kohler's motion is denied.

## BACKGROUND

This matter was removed from the First Judicial District of Louisiana on the basis of diversity jurisdiction pursuant to 29 U.S.C. § 1332. [Doc. No. 3]. ESW's Motion to Remand [Doc. No. 8] was denied. [Doc. Nos. 50 & 78]. ESW's Motion for Preliminary Injunction [Doc. No. 19] was also denied; the Court found that ESW did not meet its burden of "substantial success on the merits" [Doc. Nos. 54 & 79]. ESW's motion for summary judgment was filed in August of 2003. [Doc. No. 9]. Kohler opposed the motion at that time, and later filed a cross motion for summary judgment contending that it is entitled to summary judgment. [Doc. No. 83].

ESW was a distributor of Kohler small engines pursuant to a contract known as the central warehouse distributor agreement or "Kohler Engine Distributor Agreement" ("Agreement"). (Kohler's Exhibit 1). At the time the instant controversy arose, the parties were operating under the most recent version, signed in 1995. *Id.* The Agreement provides for termination of the contract in the last paragraph on page one stating in pertinent part:

> This agreement shall remain in effect until terminated by either party upon ninety (90) days' written notice, or *other notice required by law,* addressed to the last known address of the other party.

*Id.* (emphasis added).

By letter dated June 5, 2003, Kohler served written notice of termination of the Agreement on Al Rich, President of Engines Southwest. (Kohler's Exhibit 3). This letter references an earlier version of the Agreement, dated in 1988, but the parties have not indicated any critical differences between the two agreements. Kohler's June 2003 letter provided ESW a 90 day notice of termination from the date of delivery of the letter. The letter is marked "RECEIVED" on June 10, 2003. The letter also provides specific information about "return and or transfer of existing current and salable inventories."

At the heart of the motions for summary judgment is whether the termination procedures of the Agreement apply or if "other notice required by law" supplies additional termination procedures and, if so, were they followed. ESW contends "other notice required by law" does exist; i.e., that ESW is afforded protection by the Wholesaler Act, requiring the "agent", Kohler, to provide "good cause" and an opportunity for ESW to cure any deficiency before terminating the Agreement. Kohler counters that ESW is not afforded protection by the Wholesaler Act because ESW is itself a wholesale distributor, and

an "agent", not a protected party as defined by the Wholesaler Act. Kohler further contends that it complied with the termination procedures of the Agreement.

It is not contested that Kohler is a manufacturer of engines and engine service parts, and, therefore, an "agent" as defined by the Wholesaler Act. *See*, La. R.S. 51:481(B)(4). The parties do contest whether ESW is a "retailer", "distributor", "agent" or "dealer" pursuant to the Wholesaler Act. The parties have framed this question as part legal and part factual. A factual determination is only necessary if the Court determines that the Wholesaler Act distinguishes between a "retailer" and a "dealer."

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir.1995).

The only "contested material facts" are actually legal determinations to be made by the Court. Therefore, in order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. The Court must determine whether the Wholesaler Act provides "other notice required by law" to the termination procedures of the Agreement.

### II. Louisiana Wholesaler Act

As noted in the preceding rulings issued by the Court, the Louisiana Wholesaler Act ("Wholesaler Act") also known as the "Repurchaser Act" establishes protections for "dealers" in their business relationships with "agents." La. R.S. §§ 51:481–490. The Wholesaler Act focuses particularly on the termination of contractual relationships and the repurchase of unsold equipment upon termination. La. R.S. §§ 51:481–490; *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192 (5th Cir.2003); *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039 (La.1988), *rehearing denied* (La.1988). In order to determine whether ESW falls within the Wholesaler Act's protection, the Court must determine whether the Louisiana legislature intended the Wholesaler Act to protect local "distributors" or only local "retailers."

### A. Definitions in the Wholesaler Act

As this dispute turns on the interpretation of the statute, the Court begins with the definitions provided in the Wholesaler Act. ESW contends that it is entitled to the protections provided by the Wholesaler Act as a "dealer." Kohler asserts that ESW is an "agent" and therefore not protected as a "dealer" under the Wholesaler Act. First, the Court considers the applicability section of the Wholesaler Act, Section 51:481(A), which provides:

> The provisions of this Part shall apply to written contracts or oral agreements of definite or indefinite duration between any person, firm or corporation *engaged*

*in the business of selling, distributing or retailing* farm, construction, heavy industrial material handling, utility and lawn and garden equipment, engines, implements, machinery, attachments and repair parts for such equipment and any wholesaler, manufacturer or distributor of such equipment and repair parts, *whereby the retailer agrees with the wholesaler, manufacturer or distributor to maintain a stock of such parts, or complete equipment or machines, or attachments. . . .*

(emphasis added). There are two separate clauses in the first sentence of Section 51:481(A), both of which must be met in order for the Wholesaler Act to apply. *Lake Charles,* 328 F.3d 192 (5th Cir.2003). ESW satisfies the first clause of Section 51:481(A): ESW is a corporation engaged in *distributing* Kohler small engines. It is also undisputed that a written contract existed between ESW and Kohler. However, the second clause of Section 51:481(A) is contested.

The second clause provides that the Wholesaler Act applies *only* when the agreement between the "wholesaler, manufacturer or distributor" includes a provision "whereby the *retailer* agrees with the wholesaler, manufacturer or distributor to maintain stock of such parts or complete equipment or machines, or attachments." La. R.S. § 51:481(A) (emphasis added); *Lake Charles,* 328 F.3d at 201. ESW alleges that it is a "retailer" and that the Agreement requires ESW to keep enough stock to service buyers and uphold the Kohler warranty. The Agreement states: "The Distributor will carry a sufficient inventory of engines and parts to supply promptly the requirements in the Distributor's area of responsibility." [Agreement, Kohler's Exhibit 1]. Kohler argues that the clause only applies to "retailers." Kohler contends that the contract with ESW is not a retail agreement but distributor

agreement. Kohler also asserts that the inventory requirement in the Agreement is merely to ensure proper warranty service to customers. Kohler maintains that ESW is not a Kohler "retailer" and, therefore, the second clause is not satisfied.

The Court must first determine if the legislature intended any distinction between "retailer" and "dealer". The two clauses of the applicability section do not retain the same terminology. The first clause refers to a "person, firm or corporation engaged in the business of selling, distributing or retailing." However, the second clause refers only to "retailer." Section 51:481 also provides the definitions for the Wholesaler Act. Part B of Section 51:481 provides the "meanings" of only four terms. "Dealer" is defined as:

. . . any farm dealer, heavy industrial equipment dealer, construction equipment dealer, material handling equipment dealer, utility equipment dealer, engines equipment dealer, lawn and garden equipment dealer or retail equipment distributor dealer.

La. R.S. § 51:481(B)(3). This "meaning" is in fact only a list of the different *types* of dealers. *Id.* "Retailer" is not defined in Part B or anywhere else in the act.

Furthermore, although the meaning of "dealer" is found in Part B, the term "dealer" is not found in Part A of the same section. Section 51:481(A) does refer to the term "retailer," but "retailer" is not found in the rest of the act. On the other hand, "dealer" is used throughout the Wholesaler Act. From the plain words of the statute, it is unclear whether "retailer" and "dealer" are interchangeable or whether "retailer" is a class of "dealer." Therefore, the Court finds that the Wholesaler Act is ambiguous as to whether a "distributor" that may or may not be a

retailer is a protected party under the statute.

### B. Statutory Interpretation

When a statute is ambiguous, the Court must interpret the statute in light of Louisiana statutory interpretation law. *Palmer v. Louisiana Board of Elementary and Secondary Education*, 842 So.2d 363 (La. 2003); *F.D.I.C. v. Abraham*, 137 F.3d 264, 267–68 (5th Cir.1998). Pursuant to Louisiana substantive law, statutes are interpreted as follows:

> When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. However, when a law is susceptible of different meanings, 'it must be interpreted as having the meaning that best conforms to the purpose of the law.' The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided.

*Palmer*, 842 So.2d at 367 (citations omitted). Thus, the Court will consider the Wholesaler Act in its entirety including the legislative history, purpose and jurisprudence.

#### 1. Legislative History

The terminology confusion was created when the Wholesaler Act was amended in 1991. The amendments added "distributing" in the first clause of Section 51:481(A). La. R.S. § 51:481(A), Historical and Statutory Notes. Prior to this amendment, the sentence stated "sellers or retailers." *Id.* However, the second clause of the sentence was not amended and, therefore, only refers to "retailers." Notably, throughout the remainder of the act "retailer" was changed to "dealer". *See also,* Reengrossed Senate Bill No. 800, Digest. However, the legislature failed to include "dealer" in Section 51:481(A), the applicability section. In addition, there are no comments in the statute or historical notes explaining why the terminology was changed.

The Court has reviewed the limited legislative history available on the 1991 amendments. The Senate Commerce Committee Minutes of Meeting, May 29, 1991, indicate that Senator Crain sponsored the bill, Senate Bill No. 800, and Senator Jumonville made the motion to accept. The bill was approved without any objection or recorded discussion. The House Commerce Committee Minutes of Meeting, June 19, 1991, indicate that the Senate Bill No. 800 was presented by Representative A. Jess Smith. Jimmy Dillon, a representative of Deep South Equipment Dealers Association testified that the bill would amend the Louisiana "buy-back" laws to make them comparable to other state laws. [Minutes of Meeting]. Mike Davis, a representative of Case Corporation, a company with dealers in Louisiana, objected to the bill and testified at the meeting. *Id.* Davis opposed the bill on the basis that it would cause "unreasonable delays," and, furthermore, that the lack of definitions, including a definition of "competitive circumstances," made the bill "broad and vague" which would result in "numerous actions by suppliers being contested." *Id.* Despite these warnings, the bill was accepted unanimously. *Id.*

None of the legislative history indicates why the term "retailer" was replaced with "dealer." In his testimony, Dillon referred to the term "dealer." [Audio Tape, House Commerce Committee Meeting, June 19, 1991, Regular Session, Tape 4]. However, the discussion at the meeting centered around the new termination provisions, not the terminology change. *Id.*

## 2. Purpose of the Wholesaler Act

■ The Wholesaler Act's purpose is to protect Louisiana businesses from retaining unsaleable stock in the event a manufacturer or "agent" cancels a contractual relationship. *International Harvester Credit Corporation v. Seale*, 518 So.2d 1039 (La.1988), *rehearing denied* (La. 1988).; *see also*, La. R.S. § 51:481, Historical and Statutory Notes. The Wholesaler Act requires "agents" to buy back inventory from "dealers" at certain percentages after termination of a contract. *International Harvester*, 518 So.2d 1039.; La. R.S. §§ 51:484–486. The Wholesaler Act requires "good cause" and written 90 days notice of termination, including therein a 60 day time period to cure the alleged deficiency. *Lake Charles*, 328 F.3d at 198.; La. R.S. § 51:482. The Wholesaler Act further enumerated the only provisions that are considered "good cause". La. R.S. § 51:482(B).

In this case, the purpose of the Wholesaler Act is not at issue. ESW does not allege that it was left with a stock of unsaleable product. At the time the Agreement was terminated, Kohler had not terminated all business relations with ESW. There is no evidence before the Court of ESW's financial loss as a result of being left with unsaleable product.

## 3. Jurisprudence

The few reported cases on the Wholesaler Act do not specifically address the terminology problem. The most recent case that discussed the Wholesaler Act in detail is *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192 (5th Cir.2003). In *Lake Charles*, the Fifth Circuit Court of Appeals refers to a protected business as a "dealer." However, the court also uses the term "dealer" when referring to the second clause of Section 51:481(A) which in fact uses the term "retailer." *Id.* at 200. Furthermore, the court noted that "[t]he Dealer must be in the business of selling, *distributing* or retailing." *Id.* at 200 (emphasis added). Whereas, "[t]he Agent must be in the business of wholesaling, manufacturing or *distributing*." *Id.* (emphasis added). The *Lake Charles* court acknowledges an overlap in businesses engaging in "distributing."

In determining when to apply the Wholesaler Act, the *Lake Charles* court distinguished the situation in that case from a hypothetical situation similar to this case. The Fifth Circuit commented that the Wholesaler Act would apply in the following situation:

> For example, if LCD contracted with John Deere to sell, distribute or retail but not maintain a stock (inventory) of large and expensive farm machines; and LCD further agreed to "maintain a stock of" "repair parts for such equipment," i.e., replacement and repair parts for the farm machinery, the Repurchase Act could be applicable. This is because the hypothetical dealership agreement that requires the dealer to (1) sell but not stock the equipment, but (2) maintain an inventory of repair parts for such equipment, fits within the plain wording of the statute (and is commercially realistic as well).

*Lake Charles*, 328 F.3d at 202.

In this case, ESW contracted to "sell, distribute or retail" new Kohler equipment

and is also contracted to "carry a sufficient inventory of engines and parts." (Agreement, Kohler's Exhibit 1). According to the hypothetical in *Lake Charles*, this matter fits exactly into the scheme considered by the Wholesaler Act.

A brief summary of the few other cases show that the terminology at issue in the instant case has been used interchangeably. In a pre–1991 case, the Louisiana Supreme Court referred to the protected party as both "retail dealer" and "dealer." *International Harvester Credit Corporation v. Seale*, 518 So.2d 1039 (La.1988), *rehearing denied* (La.1988). In *Echo, Inc. v. Power Equipment Distributors, Inc.*, 719 So.2d 79 (La.App. 1 Cir. 8/7/98), *writ denied*, 729 So.2d 555 (La.1998), the court referred to the protected party as "distributor." In *Cherokee Pump & Equipment, Inc. v. Aurora Pump*, 38 F.3d 246 (5th Cir.1994), the court described the protected party as "distributor" although the court ultimately found that Illinois law, not the Wholesaler Act, applied to the contract.

In *John Deere Co. v. Slidell Tractor Co.*, 1992 WL 245609, 1992 U.S. Dist. LEXIS 14069 (E.D.La.1992), the court refers to the protected party as "dealer." Several years later, in the same case, a ruling issued by the magistrate judge refers to both "retailer" and "dealer." *John Deere Co. v. Slidell Tractor Co.*, 1995 WL 758933, 1995 U.S. Dist. LEXIS 18925 (E.D.La. 1995).

The slight guidance these cases provide on this issue does not provide an authoritative, binding ruling to follow. However, the case law does lend support to the contention that the Wholesaler Act does not require a business to be a "retailer" in order for the act to apply.

## C. Findings of the Court

The Court must read the statute in light of the entire act and must construe the provisions "in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting" the Wholesaler Act. *Palmer v. La. State Bd. of Elem. & Secondary Educ.*, 842 So.2d 363 (La.2003). This legislation is designed to protect Louisiana dealers. The 1991 amendments changed "retailer" to "dealer" save one instance. There is neither an explanation or a comment as to the deliberateness or importance of leaving this one instance of "retailer", nor case law directly addressing the terminology change. Therefore, the Court must conclude that the single reference to "retailer" remaining in the Wholesaler Act was an oversight. The Court finds that if the legislature intended "dealer" to refer only to "retail dealers," as Kohler suggests, the terminology change in 1991 would have been unnecessary. The Court further finds that the interpretation that "is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it," is that "dealer" is not confined to "retail dealers" but includes businesses engaged in distributing. There is no dispute that ESW engaged in distributing small engines. The Court now finds that the Agreement satisfies the second clause of the applicability section because ESW was required to maintain inventory of equipment and parts. Therefore, the Court holds that ESW is a "dealer" and is afforded the protection of the Wholesaler Act.

## D. Termination under the Wholesaler Act

As the Court has ruled that the Wholesaler Act does apply, the termination of the Agreement must be in compliance with the Wholesaler Act. The Wholesaler Act termination provisions are found in Section 51:482. This section states in pertinent part:

... an agent shall provide a dealer with at least ninety days' written notice of termination, cancellation, or nonrenewal of the dealership agreement. The notice shall state all reasons constituting good cause for the action and shall provide that the dealer has sixty days in which to cure any claimed deficiency, specifying the action that must be taken in order to cure the deficiency. If the deficiency is rectified within sixty days, the notice is void.

La. R.S. § 51:482(C). The section also provides for situations allowing immediate termination, but Kohler has not alleged any of the reasons provided by the statute. La. R.S. § 51:482(B)(1–8). Kohler did provide written notice of termination. However, it is undisputed that ESW was not provided "good cause" or given an opportunity to cure any declared deficiency. Thus, the Court finds that Kohler violated the statutory termination provisions of the Wholesaler Act.

## CONCLUSION

After careful consideration, the Court finds that ESW is a "dealer" pursuant to the Wholesaler Act. ESW is entitled to summary judgment as a matter of fact and law. Kohler is not entitled to summary judgment. The Court further finds that Kohler did not properly terminate the Agreement pursuant to the Wholesaler Act.

Therefore:

IT IS ORDERED that Plaintiff Engines Southwest, Inc's Motion for Summary Judgment (Rec.Doc. No. 9) shall be **GRANTED.**

IT IS ORDERED that defendant Kohler Co.'s Motion for Summary Judgment (Rec.Doc. No. 83) shall be **DENIED.**